**PITTSBURGH PRESS CLUB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 73–1051.**

United States District Court, W. D. Pennsylvania.

Feb. 17, 1977.

---

Blair A. Griffith, U.S. Atty., Pittsburgh, Pa., Thomas R. Jones, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

Leonard M. Mendelson, Pittsburgh, Pa., for plaintiff.

## OPINION

DUMBAULD, District Judge.

At the original trial, this Court rejected both of the Government's contentions: (1) that the club's dues structure produced "net earnings" inuring to the benefit of regular members; and (2) that the volume of meals and drinks consumed by non-members on the club premises is so great that the club is engaged in a lucrative restaurant business open to the general public, and thus is no longer being operated exclusively "for non-profitable purposes." *Pittsburgh Press Club v. U.S.*, 388 F.Supp. 1269, 1272 (W.D. Pa.1975).

On appeal this Court's disposition of the first point was upheld; but with respect to the second point the case was remanded for "more specific findings." *Pittsburgh Press Club v. U.S.*, 536 F.2d 572, 574, 575–76 (C.A.3, 1976). The required findings include: (1) the amount of "outside business;" (2) the percentage outside business constitutes of the entire gross receipts; (3) the amount of net profits derived from outside business; (4) the purpose for which club facilities are made available to non-members; and (5) the frequency of such use by non-members.

Upon remand, further hearing was held on December 13 and 14, 1976, at which plaintiff over objection was permitted to produce additional evidence (Tr. 9), in accordance with the doctrine of *Rochez Bros. v. Rhoades*, 527 F.2d 891, 894–5 (C.A.3,

1975), that in appropriate instances where the record is inadequate to permit the making of findings with sufficient definiteness and certainty, it better serves the due administration of justice to receive additional evidence making such findings possible rather than to rely mechanically upon the burden of proof as the basis of decision.

At the first trial plaintiff offered a survey covering the 25 largest banquets. At the second trial, in accordance with the recommendation of Dr. James L. Kenkel, an economist and statistician, an attempt to make a complete survey was undertaken, covering all the events or banquets which the IRS agent had questioned as constituting outside business (Tr. 108).

Only business of the so-called "banquet department" is involved in the determination of outside business, since the facilities of the Club require handling by that department of all parties involving ten persons or more, as the regular dining room and bar does not have sufficient space for large groups. (Tr. 24–25, 54, 70–71). The survey covered all banquet department business for the years in question, with indication of the particular items which had been questioned by the IRS (Tr. 20–21).

There were 815 questioned banquets, of which 125 disclosed no address and could not be checked. Of 690 questionnaires sent out, 340 responses were received, of which 46 were non-informative leaving 281 useful replies. (Tr. 105–106). The replies were considered reliable by the expert witness (Tr. 110, 118).

The witness classified the responses as (1) clearly an inside banquet, (2) clearly outside, or (3) doubtful (Tr. 112–113).

Of the 281 useful responses, the witness classified 196 as clearly inside income (Tr. 119), 40 as clearly outside income (Tr. 120), and 40 as doubtful (Tr. 120). In dollar value the total covered by the responses was $95,318.83, of which the outside banquets generated $14,696.87, the inside $66,-412.68, and the doubtful $14,209.28. In percentages, the inside income was 70%, the outside income 15%, and the doubtful 15% (Tr. 120). Applying these percentages to

the total dollar value of the 815 questioned banquets (Tr. 121), and treating the doubtful cases as outside income, the maximum amount of outside revenue (30%) is $83,004.00 (Tr. 122). Comparing this amount with total banquet income of $1,934,124 (Tr. 114), the outside income was 4%. (Tr. 123). If the doubtful items are treated as inside income, the outside income would be 2% (Tr. 124).

To determine net profit or loss, an allocation of expense items was made by an accountant, using methods which he (and the Court agrees) considered appropriate. Thus rent of the club premises was apportioned on a square-foot basis, comparing the private dining rooms with other areas; while expenses such as flowers, piano rental, cost of food, and the like, which were specifically attributable to the banquet business, were allocated on the basis of banquet sales revenue to total sales of the club (Tr. 45–46, 59–61, 63).

The calculations show that the banquet business as a whole showed a profit of $3,761 in 1967; and $1,808 in 1968 (Tr. 23–24); whereas in 1969 there was a loss of $22,846, in 1970 a loss of $16,865 (Tr. 26); and in 1971 a loss of $25,684 (Tr. 27). There would therefore be no net profit on outside business in the years 1969–1971, and a *de minimis* profit of $150 and $72 for the two prior years, using 4% as the percentage of outside business to total gross.

In computing the amount of outside business, use of club facilities at or below cost by charitable organizations is to be excluded. 536 F.2d at 575, note 10. Inasmuch as the entire banquet business is only negligibly profitable (presumably the active press using the main dining room and bar are heavier drinkers than the businessmen's luncheon guests typically handled by the banquet department), and inasmuch as the type of service at inside and outside events was not noticeably different (Tr. 126–27), it would seem that if any charitable organizations did use the facilities they were made

available at or below cost, but no specific events of a charitable nature have been stressed by counsel, and this particular issue does not seem significant in the case.[1] Likewise we do not deem it needful to assess the probative value of the first survey (see 536 F.2d at 576), although the expert witness regarded it as consistent with his findings (see Tr. 127). Likewise we do not need to determine what percentage of outside income (if indeed there be such a magic figure) is the critical point at which exemption is dissipated (See 536 F.2d at 575). Apparently the IRS concedes that 5% is not the maximum, and plaintiff's counsel contend that no court decision has upheld revocation where less than 46% was shown (Brief, p. 13). Since the present record shows a 4% figure, it clearly appears that the plaintiff's operation falls well within permissible limits.

It also appears plainly that the Press Club is operated in a normal manner, confined to "the services a club usually provides its members and their guests," and is not a sham or facade for a commercial operation such as a "bottle club." 388 F.Supp. 1274–75.

This Court considers the evidence offered at the hearing on remand satisfactory, convincing, and sufficient on which to base the findings desired by the Court of Appeals. Summarizing, we find on those issues as follows:

(1) the amount of outside business is not more than $83,004;

(2) the percentage of outside business is not more than 4%, and may be nearer 2%;

(3) the amount of net profits from outside business is negligible or *de minimis* ;

(4) the purpose of events at which the club facilities are used by outsiders are principally social events such as wedding or bar mitzvah receptions, and business-oriented gatherings for sales presentations and the like, in

---

1. It may be noted in passing that one dinner in 1969 was to honor the retirement of Mrs. Mildred R. Madden as financial secretary of the

Western Pennsylvania Humane Society, "Pittsburgh's oldest philanthropy." (PX C–1).

connection with the trade, profession, or business of the sponsoring member;

(5) the frequency of such events is no more than normal in a club of plaintiff's size, 3550 banquet department events having been held in the years 1967–1971 (PX C–1), of which only 815 were questioned by the IRS, and of these not over 245 were found to be outside business.

Accordingly, we find in favor of plaintiff on the merits, and it is not necessary to elaborate the circumstances with regard to when retroactive revocation is appropriate. This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law. The parties are directed to calculate the amount to be recovered by plaintiff and to submit a proposed judgment in accordance with this opinion.